# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

ANTONIO WAYNE SELLS,          )
                              )
      Petitioner,           )
                              )
v.                            )   Case No. 12-CV-0471-CVE-PJC
                              )
JERRY CHRISMAN, Warden,[1]    )
                              )
      Respondent.           )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, Antonio Wayne Sells, a state prisoner appearing pro se. Petitioner also separately filed a brief in support of his petition (Dkt. # 2). Respondent filed a response to the petition (Dkt. # 9), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. # 10). Petitioner filed a reply (Dkt. # 15). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On March 11, 2010, at approximately 6:15 p.m., two men wearing ski masks approached Rechinda Bible, an employee of National Quick Cash, in Sand Springs, Oklahoma, as she was leaving the store after closing for the day. (Dkt. # 10-2, Tr. Vol. II at 138, 141). The men, armed with what Bible believed to be a firearm, asked Bible to open the door. Id. at 141. Bible pleaded with the men, stating, "please don't do this to me," and collapsed to the ground. Id. at 142. After

---

[1] Petitioner is currently incarcerated at the Mack Alford Correctional Center. The proper party respondent is the current warden of the facility, Jerry Chrisman. Therefore, pursuant to Rule 2(a), Rules Governing Section 2254 Cases, and Rule 25(d)(1), Federal Rules of Civil Procedure, Jerry Chrisman is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

Bible's cries caught the attention of other people in the area, the men ran from the scene. Id. at 146, 285.

Bible ran to a nearby business and an employee there called the police. Id. at 146. Bible provided law enforcement with a description of both men. Id. at 147. Within minutes of the attempted robbery, officers located two individuals near the scene of the crime who generally matched Bible's descriptions. Id. at 227-29, 259-62. Sand Springs police officers transported both suspects to Bible's location, and she identified Petitioner and his co-defendant, Keontae Evans, as the two men who had approached her outside National Quick Cash minutes earlier. Id. at 148-52, 174-75.

Based on these facts, Petitioner and Evans were charged by Information filed in Tulsa County District Court, Case No. CF-2010-1044, with Attempted Robbery With a Firearm.[2] Id. at 129. A jury found Petitioner guilty of the crime charged, Dkt. # 10-3, Tr. Vol. III at 351, and, at the conclusion of the second stage, recommended a sentence of thirty (30) years imprisonment after finding Petitioner had two or more previous felony convictions. Id. at 371. On May 16, 2011, the trial judge sentenced Petitioner in accordance with the jury's recommendation. (Dkt. # 10-4, Tr. Sent. Hr'g).

Represented by attorney Virginia Sanders, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). See Dkt. # 9-1. He raised the following propositions of error:

---

[2] Subsequently, Evans, who was sixteen (16) years old at the time of the crime, pled no contest to Attempted Robbery With a Firearm in juvenile court and received probation. (Dkt. # 10-2, Tr. Vol. II at 289-91).

2

| | |
|---|---|
| Proposition I: | The eyewitness identification of Mr. Sells was an overly suggestive, one-man line-up that violated Appellant's rights to due process and a fair trial. |
| Proposition II: | The prosecution's case, even viewed in the light most favorable to the State, was insufficient to convict the appellant of the crime charged. |
| Proposition III: | Appellant was arrested without probable case. Consequently, all of the evidence obtained by the State after Mr. Sells' illegal arrest should have been stricken as fruit of the poisonous tree. |
| Proposition IV: | Prosecutorial misconduct deprived Antonio Sells of a fair trial, violated his constitutional rights, and created fundamental error in this case. |
| Proposition V: | The sentence imposed against Mr. Sells was excessive and should be favorably modified. |
| Proposition VI: | The judgment and sentence in CF-2010-1044 must be modified to accurately reflect that appellant's finding of guilt was the result of a jury verdict and not a plea of guilty by Mr. Sells. |
| Proposition VII: | The cumulative effect of all these errors deprived appellant of a fair trial and warrants relief for Antonio Sells. |

See id. In an unpublished opinion, filed June 14, 2012, in Case No. F-2011-426, the OCCA denied relief and affirmed the Judgment and Sentence of the district court. See Dkt. # 9-3.

On August 21, 2012, Petitioner commenced this federal action by filing his pro se petition for writ of habeas corpus (Dkt. # 1). Petitioner raises four (4) grounds of error, as follows:

| | |
|---|---|
| Proposition I: | The eyewitness identification of Petitioner was an overly suggestive, one-man line-up that violated Petitioner's right to due process and a fair trial. |
| Proposition II: | The prosecution's case was insufficient to convict Petitioner of the crime charged. |
| Proposition III: | Arrested without probable cause. All evidence obtained therefrom was fruit[ ] of the poisonous tree and should have been excluded. |

Proposition IV: The cumulative effect of all the above errors deprived Petitioner of his right to a fair trial.

See Dkt. # 1. Respondent argues that the OCCA's adjudications of Grounds I, II and IV were not contrary to, or an unreasonable application of, federal law as established by the Supreme Court. Respondent also argues that Ground III is not proper for federal habeas review because Petitioner was given an opportunity for full and fair litigation of his Fourth Amendment claim in the state courts. See Dkt. # 9.

*ANALYSIS*

**A.     Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner raised Grounds I-IV to the OCCA on direct appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S.

86, 100-04 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 98-100; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

5

Here, Petitioner presented his claims to the OCCA on direct appeal. See Dkt. # 9-1. Because the OCCA addressed Petitioner's claims on the merits, the Court will review these claims under the standards of 28 U.S.C. § 2254(d).

### 1. Challenge to Eyewitness Identification (Ground I)

In Ground I, Petitioner claims that the admission of Bible's "overly suggestive" eyewitness identification of Petitioner "violated [his] rights to Due Process and a fair trial." (Dkt. # 2 at 1). Petitioner argues that Bible "lacked sufficient opportunity to observe" the second man, and therefore her identification was unreliable. Id. at 2. Petitioner also asserts that both Sand Springs Police Officer John Abbey's statement that he had "suspect No. 2" in his car and the "one-man line-up" tainted Bible's identification of Petitioner. See id. at 1-2. After Petitioner and Evans were apprehended, Officer Abbey transported Petitioner to Bible's location. See Dkt. # 10-2, Tr. Vol. II at 229. Officer Abbey testified that, after he arrived, Bible approached the vehicle, pointed to Petitioner, who was seated in the backseat of Abbey's police car, and stated, "that's him." Id. at 229-31. Officer Abbey insisted he did not say anything to Bible before she identified Petitioner. See id. at 230-31, 243. Bible testified that, before she identified Petitioner, the officer who arrived at the scene with Petitioner told her he had "suspect No. 2" in the car, and asked her if "this was the guy." Id. at 165-66. The OCCA denied Petitioner's claim, finding as follows:

> [W]e find that the trial court did not abuse its discretion in admitting the eyewitness identification evidence. *Myers v. State*, 2006 OK CR 12, ¶ 26, 133 P.3d 312, 323. A review of all the circumstances of the case reveals that there is not a very substantial likelihood of misidentification. *Perry v. New Hampshire*, __ U.S. __, 132 S. Ct. 716, 724-25, 181 L. Ed. 2d 694 (2012); *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968); *Pennington v. State*, 1995 OK CR 79, ¶ 33, 913 P.2d 1356, 1365-66.

(Dkt. # 9-3 at 2). Respondent argues that the OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence presented. (Dkt. # 9 at 3).

A two-tier analysis is used to examine the constitutionality of pre-trial identification procedures. Grubbs v. Hannigan, 982 F.2d 1483, 1489 (10th Cir. 1993). First, the Court must determine whether the identification procedure used by law enforcement was unnecessarily suggestive. United States v. Bredy, 209 F.3d 1193, 1195 (10th Cir. 2000) (citing Grubbs, 982 F.2d at 1489); see Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012). "If the court determines that the procedure was unnecessarily suggestive, [it] then examine[s] 'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.'" Id. (quoting Neil v. Biggers, 409 U.S. 188, 199 (1972) (internal quotation marks omitted)). In Biggers, the Supreme Court identified five factors to be considered in determining the reliability of a pre-trial identification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199-200. The Supreme Court further explained that "the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" Perry, 132 S. Ct. at 724 (quoting Biggers, 409 U.S. at 201). "Where the 'indicators of a [witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed. Otherwise, the evidence (if admissible in all other respects) should be submitted to the

jury." Id. at 725 (quoting Manson v. Brathwaite, 432 U.S. 98, 114, 116 (1977) (internal citations omitted)).

After reviewing the record, even assuming the pre-trial identification procedure was impermissibly suggestive, the Court finds that Petitioner has failed to show the OCCA's denial of his claim was contrary to, or an unreasonable application of, federal law. Application of the Biggers factors weighs in favor of the reliability of the victim's identification. First, while the two men who approached Bible were wearing ski masks, "the sun was still out" and she "look[ed] straight at [the second man]," focusing on him for "a good three to five seconds." (Dkt. # 10-2, Tr. Vol. II at 147, 157-58). Bible also testified that, while she could not see the second man's facial features, she could see his neck and eyes. Id. at 145. Second, Bible admitted her focus was primarily on the first man, later identified as Evans, because he was holding the gun. Id. at 155. Third, Bible's prior description of the second man's clothing differed only slightly from the clothing Petitioner was wearing when arrested. Bible told police the second man was wearing a white t-shirt and jeans.[3] Id. at 147, 164. At the time of his arrest, Petitioner was wearing a gray t-shirt and gray sweat pants. Id. at 228. However, Bible's general description of the second man, as a taller, "heavyset" African-American male, matched Petitioner. Id. at 141, 145, 227-29. Fourth, Bible was certain of her identification, stating she identified Petitioner based on his "t-shirt, the color of his skin, and his build." Id. at 149. Lastly, Bible identified Petitioner in the police car only minutes after the crime was committed. Id. at 148, 236-37.

---

[3]  In Bible's written statement that she completed the day of the crime, she stated the man was wearing "blue jeans." See Dkt. # 10-2, Tr. Vol. II at 164. However, Bible testified at trial that she described them to police as "light-colored jeans." Id. at 157.

While some the factors discussed above may weigh slightly against Bible's ability to make an accurate identification, Petitioner has failed to show the OCCA's denial of his claim, based on the "totality of the circumstances" approach detailed in Biggers, was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Therefore, habeas relief on Ground I shall be denied.

### 2. Insufficient Evidence (Ground II)

In Ground II, Petitioner claims the State presented insufficient evidence to support his conviction for Attempted Robbery With a Firearm. (Dkt. # 1 at 7). Specifically, Petitioner argues that Bible's eyewitness identification of Petitioner was "questionable and high[ly] suspect due to several factors." (Dkt. # 2 at 2). Petitioner further argues that the State's evidence, including Bible's eyewitness identification, only "established a 'SUSPICION' of Petitioners' [sic] guilt." Id. In his direct appeal brief to the OCCA, Petitioner also argued that the testimony of his co-defendant, Evans, lacked sufficient corroboration. (Dkt. # 9-1 at 26-28). The OCCA rejected Petitioner's claim, finding that,

> [T]he accomplice's testimony was sufficiently corroborated. *Glossip v. State*, 2007 OK CR 12, ¶ 41, 157 P.3d 143, 152; *Cummings v. State*, 1998 OK CR 45, ¶ 20, 968 P.2d 821, 830. Reviewing the evidence in the light most favorable to the prosecution, ["]any rational trier or fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204.

(Dkt. # 9-3 at 2-3) (footnotes omitted). Respondent argues that the OCCA's decision was not contrary to, or an unreasonable application of, federal law. (Dkt. # 9 at 13).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the

9

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The same test applies to both jury and bench trials. United States v. Mayberry, 913 F.2d 719, 721 (9th Cir. 1990). "This standard of review respects the [fact finder's] responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319. A habeas court does not evaluate witness credibility or question the fact finder's reasonable conclusion based on the record. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997). The court must "accept the jury's resolution of the evidence so long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive elements of the relevant criminal offense. Jackson, 443 U.S. at 324 n.16. Under Oklahoma law, no person may be convicted of Attempted Robbery With a Dangerous Weapon unless the State proves each of the following elements beyond a reasonable doubt:

> First, wrongfully; Second, attempting to take; Third, and carry away; Fourth, property; Fifth, of another; Sixth, from the immediate presence of another; Seventh, by force or fear; Eighth, through use of a loaded or unloaded firearm or blank or imitation firearm capable of raising in the mind of the person threatened with such device a fear that it is a real firearm.

(Dkt. # 9-8). See also OUJI-CR 4-145; OKLA. STAT. tit. 21, §§ 791, 801.

Upon review of the record, the Court finds that the evidence, when viewed in the light most favorable to the State, was sufficient for any rational trier of fact to have found beyond a reasonable doubt that Petitioner was guilty of Attempted Robbery With a Firearm. Petitioner does not allege

that the State failed to prove any specific element of the crime. Instead, Petitioner focuses his argument on the issue of identity, pointing to Bible's "questionable" identification and the testimony of his co-defendant, Evans. However, the State provided sufficient testimony and circumstantial evidence to prove Petitioner committed the attempted robbery.

First, while Bible's identification was challenged, she did identify Petitioner and Evans as the two masked men who approached her outside the National Quick Cash store. See Dkt. # 10-2, Tr. Vol. II at 152, 174. Second, Robert Knight, a man living in the apartment complex nearby saw two men, matching the descriptions of Petitioner and Evans, changing shirts and "acting nervous." See id. at 184-86. Knight testified that he approached the men and asked if he could help them find anyone in the complex. See id. at 180. After hearing police sirens, he observed the two men run in different directions, scale a fence, and then be subsequently arrested by police. See id. at 186, 192-97. In court, Knight identified Petitioner as one of these two men. See id. at 188-89. Third, a second man living in the apartment complex, Sidney Swink, observed a man matching Evans' description carrying a bundle of items including a "black hoodie" and a "brown stocking cap." Id. at 214-15. Fourth, Officers Abbey and Fogleman testified that, after observing Petitioner scale a fence as described by the two men living in the apartment complex, they arrested Petitioner near the National Quick Cash store within minutes of the attempted robbery. See id. at 227-29, 259-61. Fifth, a set of car keys found on Petitioner after his arrest matched a Ford vehicle located in a restaurant parking lot directly behind the National Quick Cash store. See id. at 231, 234-36. Sixth, Evans testified that he rode with Petitioner to Sand Springs in the Ford vehicle. See id. at 269. Evans also testified that, once they arrived and parked in the restaurant parking lot where the vehicle

11

was found, Petitioner said they "[were] about to hit this lick." Id. at 270-71.[4] Evans then detailed the attempted robbery, and Petitioner's involvement. See id. at 273-87.[5] This evidence was sufficient for a "rational trier of fact" to find Petitioner guilty of the crime charged.

Therefore, the OCCA's adjudication of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, federal law or an unreasonable determination of the facts in light of the evidence presented at trial. Habeas relief on Ground II shall be denied.

### 3. Fourth Amendment Claim (Ground III)

In Ground III, Petitioner argues that, because he was "[a]rrested without probable cause," all the evidence obtained from his arrest was "fruit[ ] of the poisonous tree and should have been excluded." (Dkt. # 1 at 8). Specifically, Petitioner argues that while Officer Abbey "claimed that he merely detained [Petitioner] and denied that he had placed [Petitioner] under arrest prior to the one-man show-up for the eyewitness," Petitioner was actually "arrested the moment he was cuffed and placed in custody." (Dkt. # 9-1 at 30-31). In rejecting Petitioner's claim on direct appeal, the OCCA explained:

> [W]e find that the trial court did not abuse its discretion when it denied Appellant's motion to suppress. *Nilsen v. State*, 2009 OK CR 6, ¶ 5, 203 P.3d 189, 191. The

---

[4] "To hit a lick" is street terminology for committing a robbery. See Dkt. # 10-2, Tr. Vol. II at 271.

[5] To the extent Petitioner argues Evans' testimony lacked corroboration, and therefore was insufficient to convict Petitioner, that claim is denied. Several aspects of Evans' testimony were corroborated, including, (1) the use of the Ford vehicle, (2) general details of the robbery attempt, (3) the details of the arrest, (4) the interaction with the man who lived in the apartment complex, and (5) that Petitioner changed his shirt after the robbery attempt. While Evans' testimony differed from Bible's testimony regarding some details of the robbery, Petitioner's attorney questioned Evans about those differences and the extent of Evans' own involvement.

12

> officers' detention of Appellant was lawfully supported by a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 18880 [sic], 20 L. Ed. 2d 889 (1968); *Martin v. State*, 1980 OK CR 105, ¶ 16, 620 P.2d 446, 449. Their use of firearms and handcuffs during the detention was reasonably warranted based upon their fear for their own safety. *Id.*; *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). Appellant's subsequent warrantless arrest was properly based upon probable cause. *Martinez v. State*, 1999 OK CR 33, ¶ 14, 984 P.2d 813, 820.

(Dkt. # 9-3 at 3). Respondent argues that Petitioner's claim is not proper for federal habeas review because Petitioner was given an opportunity for full and fair litigation of his Fourth Amendment claim in the state courts. See Dkt. # 9 at 19-20.

In Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that, where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim. Brown v. Sirmons, 515 F.3d 1072, 1082 (10th Cir. 2008); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978). The opportunity for full and fair consideration detailed in Stone "includes, but is not limited to[,] the procedural opportunity to raise or otherwise present a Fourth Amendment claim[ ] and the full and fair evidentiary hearing contemplated by Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)." Cannon v. Gibson, 259 F.3d 1253, 1261 (10th Cir. 2001) (quoting Miranda, 967 F.2d at 401).

The Court concludes that the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claims. Prior to trial, Petitioner filed a motion to quash challenging, among other issues, Petitioner's arrest. See Dkt. # 9-10 at 5-7. The trial judge conducted a hearing

on the motion. (Dkt. # 9-11, Tr. Mot. Hr'g). The trial judge determined probable cause existed, noting,

> That within a few minutes less than a tenth of a mile from the scene of that place the defendant was seen running, running, jumping fences, and the like and was then ultimately stopped by the police and brought back. Whether it's an arrest or a temporary detention we're within, again, ten minutes or less.

Id. at 3-4. In addition, as noted above, the OCCA also considered Petitioner's Fourth Amendment claims on direct appeal.

Because the state courts provided an opportunity for full and fair litigation of Petitioner's claims, this Court is precluded from considering the issues raised in Ground III. See Stone, 428 U.S. at 494. See also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards). Therefore, Petitioner's request for habeas relief on Ground III shall be denied.

### 4.    **Cumulative Error (Ground IV)**

In Ground IV, Petitioner argues the cumulative effect of the errors alleged in Grounds I-III deprived him of his right to a fair trial. (Dkt. # 1 at 10). The OCCA held Petitioner "was not denied a fair trial by cumulative error." (Dkt. # 9-3 at 4).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir.

2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470).

In this case, the Court has not found two or more harmless errors during Petitioner's trial. As a result, there is no basis for a cumulative error analysis. Petitioner fails to show that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas corpus relief is denied on Ground IV.

**C.     Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

15

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Court Clerk shall note on the record the substitution of Jerry Chrisman, Warden, in place of Anita Trammel, Warden, as party respondent.

2. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3. A separate judgment in favor of Respondent shall be entered in this matter.

4. A certificate of appealability is **denied**.

**DATED** this 13th day of April, 2015.

*[signature: Claire V. Eagan]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE